## IN THE MATTER OF ALAN C. MANHEIM.

(SUPREME COURT DISCIPLINARY NO. 577)

(387 SE2d 330)

PER CURIAM.

The State Bar of Georgia brought disciplinary proceedings against Alan C. Manheim, charging him with violations of Standards 4, 44, 45, and 63 of Bar Rule 4-102 in connection with an insurance matter entrusted to him.[1]

1. In 1982, Manheim agreed to assert negligence claims against insurance companies on behalf of two clients whose apartment had been destroyed by fire in 1980. Three years later, after the first client hired another lawyer to inquire into the matter, she received from Manheim a check drawn on his escrow account for the amount of her loss, less his fee. More than three years later, after his other client filed a complaint with the State Bar of Georgia, she received from Manheim a check drawn on his escrow account for the *full* amount of her loss. Despite repeated requests, neither client received any documentation of the purported settlement. This situation became a disciplinary matter.

---

[1] Standard 4 (professional conduct involving dishonesty, fraud, deceit, or wilful misrepresentation); Standard 44 (without just cause to the detriment of his client in effect wilfully abandoning or wilfully disregarding a legal matter entrusted to him); Standard 45 (settling a claim without proper authorization from the client); and Standard 63 (failure to account for funds of a client coming into the possession of the lawyer).

2. (a) The special master concluded that Manheim violated Standards 4, 44, 45, and 63, and recommended a one-year suspension.

(b) The review panel found as follows:

After their initial meeting with Respondent, both clients called Respondent regularly to determine the status of their cases. When they reached Respondent, he assured them that things were moving towards a resolution. For three years, however, there was no resolution to either case. Although both clients spoke to Respondent occasionally during the three years which it took Respondent to settle the cases, Respondent never followed through with the promises which he made to his clients during their conversations. For example, although both clients repeatedly requested that Respondent tell them the names of the insurance companies with which he allegedly was negotiating, Respondent never revealed them. Both clients requested that Respondent provide them with copies of correspondence between him and the insurance companies, which Respondent never did.

(c) The review panel concluded that Manheim violated Standards 45 and 63. It recommended that he be suspended for a minimum period of one year, and that Manheim should not be permitted to resume the practice of law until he should provide to the State Bar of Georgia an accounting of the source and disposition of the funds collected by him on behalf of the two clients.

(d) Manheim filed exceptions to the review panel's recommendations, and appeared through his attorney at the oral argument of his appeal.

3. The record of the case establishes that:

(a) both clients testified that they received no documents concerning any insurance settlement that might have come into Manheim's possession;

(b) on two occasions during discovery, the State Bar of Georgia requested that Manheim disclose all such records;[2] and

(c) at the evidentiary hearing, Manheim refused to answer questions concerning any insurance settlement. Instead, he attempted to

---

[2] In response to Interrogatory #1, requesting "the name and address of the insurance company(ies) that settled both Ms. Leo's and Ms. McCloskey's respective claims against Charles Clay," Manheim answered, after being ordered to respond: "not applicable regarding claims against Charles Clay." Request #3 for production of documents included "all correspondences between yourself (on behalf of Ms. Leo and Ms. McCloskey) with the insurance companies which you dealt with in negotiating their respective claims." Manheim's answer was: "see enclosed." Nothing was enclosed that reflected any correspondence with any adverse party.

assert a statutory privilege.[3]

4. (a) Standard 63 provides:

A lawyer shall maintain complete records of all funds, securities, and other properties of a client coming into the possession of the lawyer and promptly render appropriate accounts to his client regarding them. A violation of this Standard may be punished by disbarment.

(b) For a protracted period of time, and until this day, Manheim has failed and refused to provide to his clients any one of the following basic elements of information: the name of any insurance company involved; the terms of any settlement; copies of any instrument accomplishing a release or discharge of any claims; a description of any transfer of any settlements funds.

(c) Manheim, an experienced attorney, has been subjected to discipline for similar conduct in the past.[4] Notwithstanding that, his entire course of conduct in this matter is marked by furtiveness, evasion, and guile. We need look no further than the Preamble to the Code of Professional Responsibility to conclude that this conduct falls far beneath an acceptable standard.[5] Accordingly, we sustain the review panel's finding that Manheim has violated Standard 63.

(d) We have reviewed Manheim's other exceptions to the Standard 63 findings, and hold them to be without merit.[6]

---

[3] The record of the hearing indicates that Manheim attempted to assert a privilege described in OCGA § 24-9-27 (b): "[N]o party or witness shall be required to testify as to any matter which shall tend to work a forfeiture of his estate." However, no such privilege can pertain under the evidence of this case.

Why answering any or all of the questions posed would work a forfeiture of the defendant's estate is not explained. This objection, if it means merely that answering would interfere with the defendant's mode of earning a living, is not acceptable. [*Tennesco, Inc. v. Berger*, 144 Ga. App. 45, 46 (240 SE2d 586) (1977).]

[4] Manheim received a public reprimand in June 1982, for violating Standard 44 (wilful abandonment of a client).

[5] That Preamble holds:

In this State, where the stability of courts and of all departments of government rests upon the approval of the people, it is peculiarly essential that the system for establishing and dispensing justice be developed to a high point of efficiency and so maintained that the public shall have absolute confidence in the integrity and impartiality of its administration. The future of this State and of the Republic, of which it is a member, to a great extent, depends upon our maintenance of justice pure and unsullied. It cannot be so maintained unless the conduct and motives of the members of our profession are such as to merit the approval of all just men.

[6] In the light of this, we do not address Manheim's contentions concerning the findings relative to Standard 45. If in the future it should appear that there never have been any funds belonging to Manheim's two clients that came into his possession, it might become necessary to review then the findings of the special master relative to Standards 4, 44, and 45.

5. We approve the recommendation of the review panel, and order that Alan C. Manheim be suspended from the practice of law for a period of one year, commencing on February 1, 1990. Additionally, that suspension shall continue in force until (a) Manheim shall have provided to the State Bar of Georgia a complete and verified accounting of any source and any disposition of any funds collected by him on behalf of these two clients, and (b) such accounting is accepted and approved by the State Bar of Georgia.

*All the Justices concur. Clarke, C. J., and Fletcher, J., disqualified.*

DECIDED JANUARY 11, 1990 —
RECONSIDERATION DENIED JANUARY 30, 1990.

*William P. Smith III, General Counsel State Bar, Paula J. Frederick, Assistant General Counsel State Bar,* for State Bar of Georgia.
*Hylton B. Dupree, Jr.,* for Manheim.